HARLAN WEST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
West v. Commissioner
Docket No. 6554-91
United States Tax Court
T.C. Memo 1992-617; 1992 Tax Ct. Memo LEXIS 648; 64 T.C.M. (CCH) 1108; October 20, 1992, Filed *648 Decision will be entered for respondent. For Petitioner: Peter R. Stromer. For Respondent: Allan D. Hill. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181, and 182. [1]
By statutory notice of deficiency respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1988 in the amount of $ 1,346. Respondent further determined additions to tax for negligence under section 6653(a)(1) in the amount of $ 67 and for failure to pay estimated tax in the amount of $ 86. The issues for decision are: (1) Whether disability benefits received by petitioner Harlan West are excludable from petitioner's gross income pursuant to section 105(c), and (2) whether petitioner is liable for the additions to tax. The parties submitted the *649 case for decision upon a full stipulation of facts. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Concord, California, when the petition was filed herein. Petitioner did not file a Federal income tax return for the taxable year 1988. During 1988, petitioner was a married individual who was 54 years of age. During 1987 petitioner was employed as a pipefitter, was a dues paying, active member of the Bay Area Pipe Trades Union and had been a member of such union for a number of years. While an employee of the Albay Construction Company in 1987, petitioner fell from a scaffold onto a cement floor while working on a construction job in Martinez, California. As a result of the fall, petitioner suffered from a compression fracture of the thoracic spine, with approximately 30 percent compression. Petitioner's injury aggravated preexisting injuries. In the mid-1950s petitioner underwent two spine infusions, and he has had multiple problems with his neck, midback, and low back throughout the years. He also suffered from disc disease and arthritic disease. Petitioner's orthopedic surgeon's report described petitioner's *650 pain as moderate pain "which could be tolerated but would cause a marked handicap in the performance of the employment activity precipitating pain." Petitioner's doctor doubted that petitioner could ever do the same type of work again, due to his "disability resulting in limitation to sedentary work." The report states that petitioner could do work "predominantly in the sitting position at a bench, desk or table, with a minimum of demands for physical effort and with some degree of walking and standing permitted." On July 13, 1988, petitioner was advised by the Board of Trustees of the Bay Area Pipe Trades Pension Plan (hereafter the Plan) that he qualified for disability retirement benefits within the meaning of the Plan effective December 1, 1987. Petitioner received $ 13,920.53 in disability retirement benefits from the Plan in 1988, along with $ 6,920 in disability insurance payments from the Social Security Administration. The Plan provides disability retirement benefits as follows: An employee shall be eligible for disability retirement if he becomes totally and permanently disabled and meets all of the following requirements: (a) He meets the credited service requirement *651 for a disability retirement under a prior plan, or has at least ten (10) years of Benefit Credits regardless of age, or has at least five (5) years of Benefit Credits and has attained the age 55 or more and has qualified for Social Security Benefits, and (b) His disability has continued for at least six months, and (c) He has been credited with at least 300 hours of Covered Employment during any one of the three (3) Plan Years ending with the year the disability began. Total and permanent disability for the purpose of this Section shall mean disability by reason of bodily injury or disease which permanently incapacitates an Employee from regularly performing work coming within the jurisdiction of the Pipe Trades Industry, except disability resulting from self-inflicted injury or the habitual use of narcotics or alcoholic beverages. The trustees may, from time to time, require satisfactory evidence of continued disability. Petitioner contends that the disability payments at issue are excludable from his gross income because: (1) They constituted payment for the permanent loss or loss of use of a member or function of the body, in that petitioner has permanently lost the use *652 of the function of his back, and (2) the payments were computed with reference to the nature of the injury without regard to the period petitioner was absent from work. Respondent, in contrast, argues that the payments received by petitioner do not satisfy either of the conditions imposed by section 105(c); and the payments must, therefore, be included in petitioner's gross income in the taxable year 1988. We agree with respondent. Section 105(a) provides that amounts received by an employee under accident and health plans funded by the employer are included in the employee's gross income. Section 105(c), however, provides an exception to the general rule: Payments Unrelated to Absence From Work. -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts -- (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, * * * and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work. Respondent determined that section 105(c) does not apply to petitioner and that payments from the plan *653 constituted income which should have been reported by petitioner in taxable year 1988. Petitioner bears the burden of disproving respondent's determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Neither the statute nor the legislative history precisely describes the injuries that constitute permanent loss of a "function of the body". However, section 1.105-3, Income Tax Regs., provides examples of qualifying injuries: For purposes of section 105(c), loss or loss of use of a member or function of the body includes the loss or loss of use of an appendage of the body, the loss of an eye, the loss of substantially all of the vision of an eye, and the loss of substantially all of the hearing in one or both ears. * * * In Hines v. Commissioner, 72 T.C. 715 (1979), we considered the application of section 105(c) to a pilot who suffered a heart attack and lost the use of a portion of his heart. The taxpayer was barred by FAA regulations from returning to his employment. We stated: "We do not think that the loss of the use of a portion of the muscle tissue of the heart constitutes the loss of a member or *654 of a bodily function." Hines v. Commissioner, supra at 719. We held, therefore, that the injury to the taxpayer's heart was not of the type envisaged by section 105(c)(1). We further concluded that it is irrelevant, when applying section 105(c), whether the taxpayer lost wages or suffered a diminution of earning capacity because of the injury. We rejected the argument in Hines that the inability to continue in one's chosen vocation is tantamount to a loss of body function pursuant to section 105(c). In Watts v. United States, 703 F.2d 346 (9th Cir. 1983), the Ninth Circuit denied a section 105(c) exclusion to a taxpayer whose hypertension prevented him from continuing to engage in his executive position. The Watts court expressly adopted our rationale in Hines and emphasized a distinction between one's "work" and one's "body". The court concluded that mere evidence that a taxpayer has become permanently incapable of performing a certain work function does not in itself meet the requirements of section 105(c). The court added: We also note that, by definition, payment for the loss of a work function *655 does not constitute payment for the loss of a body function. It is quite possible for one to lose the capacity to function in a particular work setting without one's body losing the capacity to function in some manner. The terms "work" and "body" simply are not synonymous--they have different definitions. [25]
Petitioner's partial loss of the back function does not constitute the loss of a member or a bodily function within the terms of the section 105(c) exclusion. Petitioner is free to select work which requires less strenuous physical demands than that required from a pipefitter. Nothing in the statute suggests that diminished earning capacity is relevant to the excludability of the payments. *656 We hold that petitioner failed to disprove respondent's determination, since he has not established that he has lost the permanent use of a bodily function. The payments at issue also fail to satisfy the second condition of the section 105 exclusion. Section 105(c)(2) requires two separate tests to be satisfied: (1) The payments must be computed with regard to the nature of the injury, and (2) they must not be computed with regard to the period petitioner was absent from work. In Beisler v. Commissioner, 814 F.2d 1304 (9th Cir. 1987) (en banc), affg. T.C. Memo. 1985-25, the Ninth Circuit discussed the requirement of section 105(c)(2) as follows: To accomplish the congressional purpose of excluding only those payments that compensate for permanent losses of bodily function, the nature-of-the injury requirement is best read to require that benefits vary according to the type and severity of a person's injury. Only then are the payments and the injury sufficiently related to reflect the compensatory purpose required by section 105(c). * * * [Id. at 1308.] In Beisler, the retirement disability *657 payments were paid from the National Football League Retirement Plan. The payments were determined by the number of years the retiree played in the NFL and not by the type and severity of the injury. The Ninth Circuit held that the payments were not excludable under section 105(c)(2). In Hines v. Commissioner, supra, we similarly held that the exclusion did not apply because payments under the plan were the same regardless of the particular injury suffered by a payee. In the present case, the Plan calls for the amount of disability retirement benefits to be based upon petitioner's years of benefit credit at the date of his disability retirement without reduction. Payments are not based upon the type or severity of the injury as required under section 105(c)(2). The amount of petitioner's benefits would not have varied if he had suffered from the loss of a limb or from some other disabling condition. The determining factor is merely the number of years of the employee's service, and not the nature or extent of the injury. The exclusion of section 105(c)(2) is not applicable and the payment are includable in petitioner's gross income. We turn *658 now to the question of negligence. Respondent determined that petitioner is liable for addition to tax for negligence under section 6653(a)(1) in the amount of $ 67. Negligence under section 6653(a) is lack of due care, or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination that petitioner's underpayment of tax was due to negligence or intentional disregard of rules or regulations is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Petitioner therefore bears the burden of proving he is not liable for the addition to tax. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). We conclude that petitioner was negligent in his underpayment of tax, since he did not act reasonably or use due care in formulating his tax position. *659 Petitioner did not file a return for the taxable year 1988 or introduce any evidence on the issue of negligence. Respondent also determined petitioner to be liable for the sum of $ 86 under section 6654(a) for failure to pay estimated income tax. This section imposes an addition to taxes where the taxpayer underpays his tax liability, with exceptions not applicable here. Again, petitioner did not file an income tax return for the year in issue and did not attempt to disprove respondent's determination. We hold that petitioner is liable for failure to pay estimated tax. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
25. Work is defined as (1) "Effort directed toward the production or accomplishment of something; toil; labor. (2) Employment * * * "; while body means "the physical structure of an organism * * *". The American Heritage Dictionary of the English Language 798, 80 (1976). [Id.↩ at 352.]